UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| AMCOL Systems, Inc., | ) | Civil Action No. 3:15-3422-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **OPINION and ORDER** |
| | ) | |
| Lemberg Law, LLC, and Sergei Lemberg, | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————————— | ) | |

This matter is before the court on Defendants' motion to dismiss. ECF No. 11. Plaintiff has

responded in opposition, and Defendants have replied to Plaintiff's opposition. On November 2,

2015, Defendants filed a Supplement in Support of Motion to Dismiss. For reasons discussed below,

the court grants Defendants' motion as to Plaintiff's federal claims, declines to exercise jurisdiction

over Plaintiff's state law claims, and remands the state law claims to the Richland County Court of

Common Pleas.

I. BACKGROUND

This action was originally filed in the Court of Common Pleas of Richland County, South

Carolina. On August 26, 2015, Defendants removed the case to this court based on diversity of

citizenship and federal question jurisdiction. On September 2, 2015, Plaintiff filed an Amended

Complaint. ECF No. 8. Plaintiff asserts five causes of action in the Amended Complaint:

trademark infringement and unfair competition under 15 U.S.C. § 1114; unfair competition under

15 U.S.C. § 1125(a); common law trademark infringement and unfair competition; defamation; and

1

unfair trade practices under the South Carolina Unfair Trade Practices Act (SCUTPA). Plaintiff seeks compensatory, statutory, and punitive damages, attorney's fees, and injunctive relief.

## II. STANDARD – RULE 12(B)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that Plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to Plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that Plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, 521 F.3d at 302); *see also McCleary-Evans v. Maryland Dept. of Trans.*, 780 F.3d 582, 587 (4th Cir. 2015) (noting "[*Ashcroft v.* ] *Iqbal*[, 556 U.S. 662 (2009)] and *Twombly* articulated a new requirement that a complaint must allege a *plausible* claim for relief, thus rejecting a standard that would allow a complaint to survive a motion to dismiss whenever the pleadings left open the *possibility* that a plaintiff might later establish some set of [undisclosed] facts to support recovery." (emphasis and alteration in original, internal quotation marks omitted)).

2

### III. BACKGROUND

Plaintiff holds two marks:  AMCOL and AMCOL SYSTEMS.  Am. Compl. at ¶ 32.  Plaintiff is a "business-to-business service provider," *id*. at 11, which provides, *inter alia*, debt collection services to its customers.  *Id*.  Plaintiff is subject to provisions of the Fair Debt Collection Practices Act ("FDCPA"), which prohibits, *inter alia*, "harassment" in debt collection.  *Id*. at ¶ 12 (citing 15 U.S.C. § 1692(d)).  Plaintiff alleges that it has branded and exercised control over its marks and has created substantial goodwill associated with its brand that is "recognized by the relevant consumers, including AMCOL's clients and debtors."  *Id*. at ¶ 13.  Plaintiff contends that Defendants have internet websites and a "channel" on YouTube.com which are used to advertise their services, that Defendants' use of Plaintiff's trademarks is likely to and has prevented "Internet users from accessing Plaintiff's services on Plaintiff's own website[,] *id*. at ¶ 35, and that "potential clients of AMCOL who encounter Defendant's online advertising are likely to be deceived into believing that AMCOL's services violate applicable laws such as the FDCPA[,]" *id*.  Plaintiff contends debtors seeking information about Plaintiff "who encounter Defendants' online advertising are likely to be confused" into believing untruths about Plaintiff "and as a result will choose to retain Defendants rather than working with AMCOL and paying their debts."  *Id*.

Defendants are a law firm and its managing partner.  Defendants represent plaintiffs in actions against debt collectors, and have "several websites soliciting potential clients to file lawsuits against debt collectors, including www.stopdebtcollector.com and www.debtbulldog.com."  Am. Compl. at ¶ 19.  According to the Amended Complaint, Defendants also "own and operate" a channel on YouTube.com which is used to advertise Defendants' legal services and solicit potential clients.  *Id.* at ¶ 20.  Plaintiff alleges that these internet sources contain interactive features

3

"specifically intended to interact with residents of South Carolina." *Id*. at ¶ 21 and that Defendants use Plaintiff's marks in commerce and in connection with offering of their (Defendants') services. Plaintiff alleges that Defendants' use of a heading titled "Stop AMCOL Systems Harassment," *id.* at ¶ 52, libelously suggests that Plaintiff violates the FDCPA in the course of its business. Additionally, Plaintiff attaches a copy of a screenshot of the "heading" for Defendants' YouTube Channel which states "Amcol Systems Calling You? Sue Amcol Systems for Harass[ment]." *Id.* at Ex. G, ECF No. 8-7. Plaintiff alleges Defendants also published libelous statements in the comments section of their website (a review of the attachments to the Amended Complaint reveals the comments in question appear on stopdebtcollectors.com, *see* Am. Compl. at Ex. H, ECF No. 8-8), and that Defendant Lemberg authored comments under the alias "RightsGuy" which are "libelous *per se*." Am. Compl. at ¶ 57, 58. The Amended Complaint does not identify any specific comments made by "RightsGuy."

## IV. DISCUSSION

### A. Federal Causes of Action

### 1. Trademark Infringement and Unfair Competition under 15 U.S.C. § 1114

To establish trademark infringement under the Lanham Act a plaintiff must allege: "(1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 152 (4th Cir.2012) (internal citations omitted). The "ultimate question" in determining consumer confusion is whether there exists a likelihood that an appreciable number of ordinarily prudent

4

purchasers will be misled, or indeed simply confused, as to the source of the goods or services in question. *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990) (quotation marks and citations omitted). In assessing whether a defendant's use of the marks is likely to cause confusion, a court must consider how "the two parties actually use their marks in the marketplace." *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006). When examining the likelihood of confusion in the marketplace, a court examines only those in the relevant consumer group, not the general public. *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 651–52 (11th Cir. 2007). "A potential customer is one who might someday purchase this kind of product or service and pays attention to brands in that market." 4 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 23:5, at 23–23 (4th ed. 2008). "[F]or example, in a case concerning similar marks used on recreational sailboats, the possible confusion of a person who has no interest in boats at all is not relevant." *Id.*; *see also Estee Lauder, Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1511 (2d Cir.1997) (noting that the test "is whether confusion is probable among numerous customers who are ordinarily prudent").

Defendants do not dispute that they are using Plaintiff's marks without Plaintiff's permission, nor do they deny that they are using the marks in commerce in connection with advertising their own services. However, Defendants argue Plaintiff has failed to allege actionable consumer confusion.

Defendants cite *Radiance Foundation, Inc. v. N.A.A.C.P.*, 786 F.3d 316 (4th Cir. 2015), and *Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005), for the proposition that criticism of Plaintiff via use of its marks does not equate consumer confusion. Plaintiff counters that *Radiance* and *Lamparello* are inapposite as these cases involved First Amendment issues. While it is true these cases address the potential tension between commercial and constitutionally protected speech, the

Fourth Circuit notes that trademark protections do not "impinge the rights of critics and commentators," *Radiance Found.*, 786 F.3d at 321, because

> an actionable trademark claim does not simply require that the alleged infringer used in commerce the mark that the trademark holder possesses. It also requires that the infringer's use be "in connection with" goods or services in a manner that is "likely to cause confusion" among consumers as to the goods' or services' source or sponsorship.

*Id*. at 322.

Defendants cite *Allied Interstate LLC v. Kimmel & Silverman P.C.*, No. 12 Civ. 4204(LTS)(SN), 2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013), and *NCC Business Services, Inc. v. Lemberg & Associates, LLC*, No. 3:13-cv-795-J-39MCR, 2014 WL 5510892 (M.D. Fl. June 6, 2014), *adopted by* 2014 WL 5514247 (M.D. Fl. July 23, 2014), in further support of their arguments regarding lack of actionable confusion. In *Allied Interstate*, Plaintiff Allied Interstate ("Allied") provided debt collection services to its customers. Defendant Kimmel & Silverman, P.C. ("K&S") was a law firm that operated a website which advertised its services and "generat[ed] leads for potential FDCPA claims against" Allied. *Allied Interstate*, 2013 WL 4245987 at *1. The website included a link which allowed website users to select "Allied Interstate" (among other options) in response to the question "Who Have You Heard From?" and a column on the left side of every page of the website included a link to "Stop Allied Interstate Debt Harassment," which "redirect[ed] the user to a page describing Allied's purported misconduct." *Id.* In assessing K&S's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court rejected the likelihood of confusion element of Allied's New York common law trademark infringement claim (the elements of which are coextensive with a Lanham Act trademark infringement claim). The court found that "[n]othing alleged in or attached to the Complaint provides any plausible factual support for the confusion

6

element of Plaintiff's unfair competition . . . claim[ ]." *Id.* at *2. "[T]he content of Defendants' advertising . . . facially disassociates Defendants from Plaintiff's businesses. Indeed, Defendants are plainly soliciting complaints about Plaintiff's services and inviting searchers and visitors [to the website] to consider suing the Plaintiff." *Id.* at 6.

In *NCC Business Services*, the district court adopted without comment a Report and Recommendation by the assigned United States Magistrate Judge which recommended granting a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Lemberg & Associates, LLC, a defendant in the action currently before this court. In *NCC*, Plaintiff NCC Business Services ("NCC") alleged that Defendant Lemberg & Associates, LLC ("Lemberg") violated the Lanham Act by its unauthorized use of NCC's mark which was "likely to cause confusion to clients or customers of Plaintiff who search the internet for information about Plaintiff." *NCC Business Services*, 2014 WL 5510892 at *3. The Magistrate Judge, persuaded by the reasoning in *Allied Interstate*, found that

> Plaintiff has failed to plausibly allege that Defendant's website, through its references to NCC Business Services, Inc., is likely to cause confusion among consumers because the website makes clear that it belongs to a law firm suing debt collectors, such as Plaintiff, and any references to Plaintiff's name are merely for the purpose of advertising Defendant's services and generating leads for potential lawsuits.

*NCC Business Services*, 2014 WL 5510892 at *7.

Plaintiff's Amended Complaint establishes it is a "business-to-business service provider," and Defendant Lemberg Law is "a law firm which has a division focused on plaintiff's litigation against debt collectors." Am. Compl. at ¶ 18. It cannot be said that the relevant consuming group – businesses seeking to hire Plaintiff to pursue debts owed by consumers– would be confused as to the "source or sponsorship" of the services offered by Defendants' use of the marks. Additionally,

contrary to Plaintiff's assertions, debtors cannot be said to be part of the relevant consuming group even if they "choose" to work with Plaintiff to pay off debts. Debtors are subjects of the collection work AMCOL is hired to perform by creditors. A debtor choosing to work with AMCOL cannot be said to be a customer of AMCOL, a company retained to pursue collection of the debt. Finally, even though *Allied Industries* and *NCC Business Services* are not binding on this court, the reasoning is persuasive in light of the similarity of Plaintiff's allegations in the Amended Complaint. As set forth in *Radiance Foundation*, an alleged infringer's use must be in connection with the infringer's services in a manner likely to cause confusion among consumers as to the services' source or sponsorship. *See Radiance Found.*, 786 F.3d at 322. The allegations of the Amended Complaint are patently insufficient to indicate that Defendants' use of AMCOL's marks is likely to confuse creditors about the source or sponsorship of Defendants' services, services clearly aimed at suing debt collectors. Accordingly, Defendants are entitled to dismissal of Plaintiff's first cause of action.

### 2. Lanham Act – 15 U.S.C. § 1125(a)

Plaintiff alleges Defendants' use of Plaintiff's marks contains "false and misleading representations of fact, such as that AMCOL harasses debtors in violation of the FDCPA." Am. Compl. at ¶ 42. However, in relation to this cause of action, Plaintiff fails to specifically identify the purported "false and misleading representations of fact." Defendants argue that Plaintiff's § 1125(a) false advertising claim fails, as two headings identified by Plaintiff in its defamation cause of action – "Stop AMCOL Systems Harassment" and "Sue AMCOL Systems for Harassment" – do not result in the type of consumer confusion necessary to support a claim under this statutory section. Dfts' Rply at 10-11, ECF No. 15.

The Lanham Act creates a private right of action for corporate victims of "false or misleading" descriptions or representations. 15 U.S.C. § 1125(a). Subsection A of § 1125 covers "false association," and subsection B covers "false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. __, __, 134 S. Ct. 1377, 1384 (2014). Section 1125(a)(1)(B) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).[1]

---

[1]Title 15 U.S.C. § 1125(a)(1)(A) covers:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A). Subsection A is sometimes referred to as addressing "false designation of origin" claims. To state a claim for false designation of origin, a plaintiff must show: (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers. *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001).

9

A review of the Amended Complaint reveals that Plaintiff's claim is for false advertising. See ECF No. 8 at 7 ¶ 43 ("Defendants' false and misleading descriptions and representations of fact are in commercial advertising and promotion of Defendants' services and misrepresent the nature, characteristics and qualities of AMCOL's services and commercial activities"). A plaintiff asserting a false advertising claim under the Lanham Act must establish that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 501 (4th Cir. 2015) (quoting *PMB Prods., Inc. v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011)). To establish liability under the false advertising provisions of the Lanham Act, "the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir.1997).

For reasons explained in Section A.1. above, Plaintiff cannot establish that Defendants' use of the marks is "likely to mislead and to confuse consumers given the merchandising context." *C.B. Fleet Co.*, 131 F.3d at 434. Plaintiff alleges that its damages include "revenue AMCOL would have otherwise generated had the misled debtors worked with AMCOL rather that Defendants . . . ." Am. Compl. at ¶44. However, as discussed above in Section A.1., the "merchandising context" is that of Plaintiff's consumers, *i.e.*, creditors seeking to hire Plaintiff to collect debts. Plaintiff has failed to

10

allege a plausible claim that such consumers are likely to believe that Defendants are providing debt collection services on behalf of creditors. Therefore, Defendants are entitled to dismissal of Plaintiff's claim for false advertising pursuant to 15 U.S.C. § 1125(a)(1)(B).

### B. State Law Causes of Action

It is this court's customary practice to decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed in advance of trial. 28 U.S.C. § 1367; *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). As the Fourth Circuit explained in *Taylor v. Waters*, 81 F.3d 429, 437 (4th Cir. 1996), the decision to decline the exercise of supplemental jurisdiction after dismissal of the original jurisdiction claim will "hinge on the moment within the litigation when the dismissal of the touchstone claim takes place . . . ." (*quoting* 28 U.S.C. § 1367, practice commentary (West 1993)). Where the original jurisdiction claim is dismissed before trial, the state claims should be dismissed as well. *Gibbs*, 383 U.S. at 717; *Taylor*, 81 F.3d at 437.

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise jurisdiction over Plaintiff's state law claims and they are remanded to the Richland County Court of Common Pleas.

### V. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted as to Plaintiff's federal causes of action. The court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and they are remanded to the Richland County Court of Common Pleas.

**IT IS SO ORDERED**.

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
December 10, 2015

11