IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| AMCOL Systems, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Lemberg Law, LLC, and Sergei Lemberg, <br><br> Defendants. | C/A No. 3:15-3422-CMC <br><br><br> OPINION AND ORDER <br> ON MOTIONS TO <br> DISMISS AND RECONSIDER <br> (ECF Nos. 11, 29) |

Through this action, AMCOL Systems, Inc. ("AMCOL"), seeks relief from Lemberg Law, LLC, and Sergei Lemberg (collectively "Defendants"), for alleged violations of state and federal law. AMCOL is a "business-to-business service provider" whose "services include debt collection." Amended Complaint ¶ 11 (ECF No. 8). Defendants are an attorney and law firm with a practice that includes "plaintiff's litigation against debt collectors." *Id.* ¶ 19.

AMCOL's claims arise out of statements Defendants made in internet advertising, specifically comments on two websites and a YouTube channel, which "solicit[] potential clients to file lawsuits against debt collectors." *Id.* ¶¶ 19-20. AMCOL alleges that Defendants have used the terms "AMCOL" and "AMCOL SYSTEMS . . . in connection with the advertising and offering of [Defendants'] services" and that this use "is likely to result and has resulted in consumer confusion." *Id.* ¶¶ 22-23. AMCOL further alleges that statements made in Defendants' online advertising are defamatory and "have damaged AMCOL's business and reputation as well as incited debtors to sue AMCOL." *Id.* ¶ 25; *see also id.* ¶ 27 (alleging "Defendants [also] invited and encouraged defamatory statements by third parties on their websites by providing comments sections on their webpages.").

AMCOL asserts the following five causes of action: (1) trademark infringement and unfair competition under 15 U.S.C. § 1114 ("Section 1114 Claim"); (2) unfair competition under 15 U.S.C. § 1125(a) ("Section 1125(a) Claim"); (3) common law trademark and unfair competition; ("Common Law Trademark Claim") (4) defamation ("Defamation Claim"); and (5) violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.* ("SCUTPA Claim"). The court previously dismissed the two federal claims and remanded the action to state court without addressing Defendants' motion to dismiss the three state law claims. ECF No. 26. The court subsequently granted Defendants' motion to reconsider the decision to remand the action. ECF No. 34 (granting motion and withdrawing order of remand).

The matter is now before the court on AMCOL's motion to reconsider dismissal of its Section 1125(a) Claim (ECF No. 29) and on previously unresolved aspects of Defendants' motion to dismiss (ECF No. 11). For reasons set forth below, the court denies AMCOL's motion to reconsider dismissal of the Section 1125(a) Claim. The court grants Defendants' motion to dismiss to the extent it seeks dismissal of AMCOL's Common Law Trademark and SCUTPA Claims. The court denies Defendants' motion to the extent it seeks dismissal of AMCOL's Defamation Claim but limits that claim in some respects.

### I. AMCOL'S MOTION TO RECONSIDER

By order entered December 10, 2015, the court dismissed AMCOL's Section 1114 and Section 1125(a) Claims. ECF No. 26 ("Dismissal Order"). Through its present motion, AMCOL seeks reconsideration of the dismissal of its Section 1125(a) Claim. AMCOL argues that the court construed this claim too narrowly by considering only whether the alleged misrepresentations led "to direct diversion of creditors" and failed to consider whether the alleged misrepresentations

"damaged [AMCOL's] brand, i.e., lessened the goodwill associated therewith by creditors." ECF No. 29 at 1-2 (relying on 15 U.S.C. § 1125(a)(1)(B)).

As explained in more detail below, this argument does not support reconsideration because it ignores the injuries alleged under this cause of action, which refer only to deception and misleading of *debtors*, revenue lost when *debtors* work with Defendants to oppose collection rather than working with AMCOL to pay the debt, and legal expenses resulting when *debtors* sue AMCOL in what AMCOL describes as meritless lawsuits. ECF No. 8 ¶¶ 43, 44. AMCOL also failed to raise this argument or to propose corresponding amendments to the complaint prior to entry of the Dismissal Order or even following entry of that order. While the delay in raising the present arguments or seeking to amend the complaint does not mandate denial of the motion for reconsideration, it does weigh against reconsideration.

For all of these reasons, the motion to reconsider is denied. Denial of this motion does not, however, preclude AMCOL from seeking to amend the complaint if the amendment is otherwise warranted.

**A.     STANDARD**

Reconsideration of interlocutory orders is governed by Rule 54(b) of the Federal Rules of Civil Procedure. *See*, *e.g.*, *Am. Canoe Ass'n v. Murphy Farms*, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003). Under Rule 54(b), "any order or other decision, however designated, . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Thus, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment *when such is warranted.*" *Am. Canoe Ass'n*, 326 F.3d at 514-15 (noting reconsideration under

Rule 54(b) is "committed to the discretion of the district court" with the goal of "reach[ing] the correct judgment under law.") (emphasis added).

In light of Rule 54(b)'s permissive language, a court's discretion to review an interlocutory order is not limited to the strict standards applicable to motions to alter or amend a final judgment under Rule 59(e) or for relief from judgment under Rule 60(b). *Id.* at 514-15. The decision whether to reconsider a prior ruling is, instead, "committed to the discretion of the district court." *Id.* at 515.

"[D]octrines such as law of the case . . . have evolved as a means of guiding that discretion." *Id.* Under the law-of-the-case doctrine, "earlier decisions of a court become law of the case and must be followed unless (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Id.* (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988) (internal marks omitted). While the district court's decision whether to reconsider a prior interlocutory ruling "may be tempered at times by concerns of finality and judicial economy," the court retains an "ultimate responsibility . . . to reach the correct judgment under law." *Id.* (finding standing issue and related circumstances "present[ed] the type of exceptional circumstances justifying reconsideration and render[ed] . . . denial of [reconsideration] an abuse of discretion").

### B.     CHALLENGED RULING

In granting Defendants' motion to dismiss the Section 1125(a) Claim, the Dismissal Order considered both subparts of Section 1125(a)(1), explaining that Subpart (A) covers claims for false association while Subpart B covers claims for false advertising. ECF No. 26 at 9 (citing *Lexmark Int'l Inc. v. Static Control Components*, ___ U.S. ___, 134 S. Ct. 1377 (2014)); *id.* n.1 (noting

4

Subpart A claims are sometimes referred to as false designation of origin claims). Considering the allegations of the Amended Complaint and AMCOL's arguments in opposition to dismissal, the court construed AMCOL's Section 1125(a) Claim as a claim arising under Subpart B. *Id.* at 10.[1]

Reciting the elements of a Subpart B false advertising claim, the Dismissal Order noted that the fifth element required proof that AMCOL "has been or is likely to be injured as a result of the misrepresentations, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Id.* at 10 (quoting *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495 at 501 (4th Cir. 2015)). The Dismissal Order noted that the alleged misrepresentation must be "likely to mislead and to confuse consumers *given the merchandising context*." *Id.* at 10 (emphasis added) (citing *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997)). The Dismissal Order found a disconnect between AMCOL's potential customers, i.e., creditors, and the injuries alleged in the Amended Complaint, "revenue AMCOL would have otherwise generated had the mislead debtors worked with AMCOL rather than Defendants." The court, therefore, concluded AMCOL had not "allege[d] a plausible claim that such consumers [creditors] are likely to believe Defendants are providing debt collection services on behalf of creditors." *Id.* at 11.

C.  **ARGUMENTS**

**AMCOL's Arguments.** AMCOL argues that the court failed to fully consider the false advertising claim under 15 U.S.C. § 1125(a) because it failed to address whether Defendants' actions "lessened the goodwill associated [with AMCOL's brand] *by creditors*." ECF No. 29 at

---

[1] The Amended Complaint does not specify which subpart applies. AMCOL's arguments in opposition to dismissal and in favor of reconsideration, however, indicate that its Section 1125(a) Claim is intended as a claim under 15 U.S.C. § 1125(a)(1)(B).

1. AMCOL notes that consumer confusion is not required under Section 1125(a)(1)(B) because "[a] claim for false advertising can be based on misrepresentations about Defendants' services *or those of another person*." *Id.* at 2 (citing Section 1125(a)(1)(B) and *Design Res., Inc.*, 789 F.3d at 501) (emphasis added); *see also id.* at 3 (citing *Design Res.* for the proposition "[f]alse advertising is actionable if it leads to a direct diversion of sales *or a lessening of the goodwill associated with a brand.*" (emphasis added)). AMCOL explains that it is complaining of false representations "that AMCOL violates the law in carrying out its services and should be sued." *Id.* (citing Amended Complaint ¶¶ 25, 35, 42).[2] AMCOL acknowledges that the Dismissal Order found "no sufficient allegation of direct diversion of creditors" but argues dismissal of the Section 1125 Claim should be reconsidered because it failed to consider AMCOL's "complain[t] of

---

[2]  Paragraph 25 is found under the heading "Factual Allegations" and reads as follows: "Defendants' advertising includes knowingly and maliciously published defamatory, malicious, and injurious statements about AMCOL on Defendants' websites which have damaged AMCOL's business and reputation as well as incited debtors to sue AMCOL." ECF No. 8 ¶ 25 (citing Exhibit H). Paragraph 35 is found under AMCOL's Section 1114 Claim and reads as follows:

> Defendants' use of Plaintiffs trademarks is likely to and has prevented and hindered Internet users from accessing Plaintiff's services on Plaintiff's own website. Potential clients of AMCOL who encounter Defendants' online advertising are likely to be confused and deceived into believing that AMCOL's services violate applicable laws such as the [Fair Debt Collections Practices Act]. Debtors looking for information about AMCOL who encounter Defendants' online advertising are likely to be confused and deceived into believing that AMCOL operates unfairly and even illegally, and as a result will choose to retain Defendants rather than working with AMCOL and paying their debts.

ECF No. 8 ¶ 35. Paragraph 42, the only cited paragraph specific to AMCOL's Section 1125 claim, reads as follows: "Defendants' online advertising includes false and misleading descriptions and representations of fact, such as that AMCOL harasses debtors in violation of the FDCPA." ECF No. 8 ¶ 42.

Defendants' false representations leading to the lessening of the goodwill associated with AMCOL's brand." *Id.* at 3 (citing Amended Complaint ¶¶ 13, 25, 38).[3]

AMCOL asserts that its Section 1125(a) Claim should survive, "[e]ven if the analysis is limited to creditors . . . for lessening AMCOL's goodwill with those consumers." *Id.* at 3. It explains that, because of "Defendants' lessening of AMCOL's goodwill, creditors are less likely to hire AMCOL." *Id.* (explaining that creditors may be dissuaded from hiring AMCOL "because even though a debt is valid, if AMCOL's techniques for collecting it violate the FDCPA, the creditor will not recoup the debt, which would defeat the creditor's very purpose of retaining AMCOL." *Id.*

Ultimately, AMCOL argues that it has alleged all necessary elements of a claim under Section 1125(a)(1)(B) because it has alleged all of the following: (1) "Defendants made literally

---

[3] Paragraph 13, found under the Factual Allegations generally applicable to the complaint, reads as follows: "AMCOL's success is due in large part to its branding and the control exercised over the use of its marks. The goodwill associated with AMCOL's brand has substantial value and is recognized by the relevant consumers, including AMCOL's clients and debtors." ECF No. 8 ¶ 13. Paragraph 25, quoted above (n.2), is located under the same heading. Paragraph 38 is located under AMCOL's Section 1114 claim and reads as follows:

> AMCOL has been damaged in its business, reputation, and goodwill as a direct and proximate result of the Defendant's [sic] acts and omissions as stated herein. AMCOL's damages include but are not limited to revenue AMCOL would otherwise have generated had the misled debtors worked with AMCOL rather than Defendants, and expenses such as attorneys fees incurred in defending itself against meritless lawsuits.

ECF No. 8 ¶ 38.

false representations about AMCOL's services (*id.* at 4 citing ECF No. 8 ¶ 42)[4]; (2) these "misrepresentations are material in that they *may dissuade creditors from working with AMCOL*" (*id.* citing ECF No. 8 ¶¶ 35, 40 (emphasis added))[5]; (3) the alleged misrepresentations actually deceived or had a tendency to deceive a substantial segment of the audience (incorporating citations to ECF No. 8 ¶¶ 35, 40); (4) the alleged misrepresentations were placed in interstate commerce; and (5) "AMCOL has been or is likely to be injured as a result of the misrepresentations by a lessening of goodwill associated with its services" (citing ECF No. 8 ¶¶ 13, 25, 38, 40 (all quoted above)). AMCOL concludes that the court should reconsider dismissal of the Section 1125(a) Claim because the dismissal order did not fully consider the "claim for false advertising about AMCOL's services which has lessened the goodwill associated with AMCOL's brand[.]" ECF No. 29 at 4.

**Defendants' Response.** In response, Defendants maintain that AMCOL's allegations fail to support four of the five elements of a false advertising claim. ECF No. 32 at 2 (asserting AMCOL has offered no advertisement demonstrating that "Defendants maintain that 'AMCOL harasses debtors in violation of the FDCPA'" and referring to evidence of suits against AMCOL for FDCPA violations). These arguments turn, in part, on the lack of specificity as to the alleged

---

[4] Paragraph 42, quoted in full above (n.2), is found under the Section 1125(a) Claim and alleges generically that that Defendants have made "false and misleading descriptions and representations of fact, such as that AMCOL harasses debtors in violation of the FDCPA."

[5] Paragraph 35, quoted in full above (n.2), is found under the Section 1114 Claim. It includes the following allegation arguably relating to loss of goodwill among AMCOL's creditor-clients: "Potential clients of AMCOL who encounter Defendants' online advertising are likely to be confused and deceived into believing that AMCOL's services violate applicable laws such as the FDCPA." Paragraph 40, which incorporates all prior allegations, is the first paragraph under the Section 1125 Claim.

false statements. *Id.* Defendants also assert that "a false advertising claim can only be asserted against a competitor in the marketplace." *Id.* at 2 (citing *C.B. Fleet Co.*, 131 F.3d at 434); *see also id.* at 3 (quoting *POM Wonderful LLC v. Coca-Cola Co.*, ___ U.S. ___, 134 S. Ct. 2228 (2014) for definition of "competitor" as "all those within the class of persons and entities protected by the Lanham Act."). Defendants maintain that no false advertising claim may be maintained because AMCOL and Defendants serve "vastly different clientele." *Id.* at 3 (this argument also relies on the court's ruling that AMCOL had not set forth a "plausible claim that [its] consumers are likely to believe that Defendants are providing debt collection services on behalf of creditors.").[6]

Defendants also argue that the alleged misrepresentations could not be material because they "could not influence the decision making of AMCOL's creditor clients." *Id.* at 4 (noting AMCOL's allegations and prior arguments focused on the "alleged response of debtors, not its actual clients."). Finally, Defendants argue that AMCOL's allegations of loss of goodwill are insufficient because "it has not included sufficient factual detail to elevate those conclusory allegations from the hypothetical to the plausible." *Id.* at 4.

**AMCOL's Reply.** Through its reply, AMCOL challenges the premise that only a direct competitor may assert a false advertising claim. This argument relies on the United States Supreme Court's recent decision in *Lexmark*, 134 S. Ct. 1377, which adopted a broad view of who may qualify as a "competitor" entitled to seek relief under Section 1125(a) of the Lanham Act. Specifically, *Lexmark* held that there were only two limitations on those entitled to seek relief under Section 1125(a): the "zone of interests" and proximate cause. *Lexmark*, 134 S. Ct. at 1390;

---

[6] Defendants characterize this holding as stating that AMCOL *could not* plausibly allege such a claim. The actual holding was that it *had not* done so.

9

*see also id.* at 1392 (noting it is "a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false advertiser's direct competitors." (emphasis in original)). *Lexmark* defined the zone of interests for a Section 1125(a) false advertising claim as including those who "allege an injury to a commercial interest in reputation or sales." *Id.* at 1390. As to proximate cause, *Lexmark* held that the Section 1125(a) plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by defendant's advertising." *Id.* at 1391.[7] AMCOL asserts, without further explanation, that it meets both requirements "for the same reasons" as did Static Control in *Lexmark*.

AMCOL also responds to Defendants' argument that the alleged false statements are either not false or not material or both. As to this issue, AMCOL asserts that Defendants are relying on factual arguments not properly considered in support of a motion to dismiss for failure to state a claim. ECF No. 33 at 5 (noting that whether an advertisement is literally false is an issue of fact).

C.     **DISCUSSION**

**Section 1125(a).** Section 1125(a) provides, in relevant part, as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

---

[7] The allegations in *Lexmark* bear some similarities to the present action in two respects. First, the parties were not direct competitors. Instead, Static Control was a supplier to third parties who were direct competitors of Lexmark for the sale of printer cartridges. Second, Static Control alleged loss of sales and goodwill due to Lexmark's allegations of illegal activity by Static Control. The Court held that these allegations sufficed to bring Static Control within the zone of interests protected by Section 1125(a). *See id.* at 1393 ("When a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements.").

>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

As noted above, the Dismissal Order quoted both subsections, characterizing subsection A as addressing "false association" and subsection B as addressing "false advertising," and concluded that AMCOL's claim was one for false advertising. ECF No. 26 at 9-10. The court further noted that a false advertising claim required proof that the statement was "either false on its face or, although literally true, likely to mislead and to *confuse consumers given the merchandising context*." *Id.* (quoting *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997) (emphasis added). The Dismissal Order concluded that AMCOL could not make out a claim in the relevant "merchandising context" because AMCOL's customers were creditors and AMCOL had "failed to allege a plausible claim that such consumers are likely to believe that Defendants are providing debt collection services on behalf of creditors." Thus, as AMCOL now argues, the ultimate ruling focused on the risk of confusion as to the type services provided by the parties, not whether AMCOL suffered a loss of goodwill with its creditor customers.

For purposes of this order, the court will assume without deciding that AMCOL's present characterization of its Section 1125(a) Claim would, if consistent with the complaint, survive a motion to dismiss under Rule 12(b)(6). This does not, however, warrant reconsideration of the

11

Dismissal Order because AMCOL's present characterization of its Section 1125(a) Claim is inconsistent with specific allegations in the Section 1125(a) Claim.  Most critically AMCOL's specification of damages under its Section 1125(a) Claim focuses on the impact Defendants' comments had on *debtors.*  While not dispositive, it is also notable that AMCOL failed to present these arguments prior to the challenged ruling and has not, even now, proposed an amendment to the complaint consistent with the arguments AMCOL now advances.  For these reasons, as more fully explained below, the motion to reconsider is denied.

Although the Amended Complaint suggests the *possibility* that AMCOL *might* have a Section 1125(a)(1)(B) claim for false advertising based on damage to its goodwill and business vis-à-vis its relationship with its creditor customers, there is at most a hint of such a claim at any point in the Amended Complaint.  The specific injuries alleged under the Section 1125(a) Claim, in contrast, refer only to diversion of *debtors* through false statements leading *debtors* to believe AMCOL engages in improper collection practices.  Nothing in this cause of action suggests AMCOL's *creditor* customers were mislead or that AMCOL suffered an injury to reputation or business in its relationship with its creditor customers.

AMCOL's arguments in opposition to Defendants motion to dismiss, likewise, suggest AMCOL is relying, exclusively, on Defendants' misleading statements to debtors, and resulting loss of goodwill with and the ability to work with debtors.  While this memorandum states that AMCOL is relying on Section 1125(a)(1)(B), which encompasses broader claims than Section 1114 (or Section 1125(a)(1)(A)), there is no reference to creditor-specific facts.  This leaves only the possibility that AMCOL intended its Section 1125(a) Claim to encompass claims for injuries to its relationship with its creditor customers instead of or in addition to the debtor-focused injuries actually alleged.

12

It is only through its present motion for reconsideration and related briefing that AMCOL clearly states that its Section 1125(a) Claim seeks recovery for damage to its relationship with its own creditor customers. Thus, AMCOL's motion for reconsideration is an attempt to present an argument it could have but did not make previously. In light of the standard applicable to motions to reconsider interlocutory orders, this delay is not necessarily fatal to the request for reconsideration. It is, nonetheless, a factor the court considers in the interest of judicial economy as any other rule would encourage parties to present their arguments in piece-meal fashion.

Setting aside the issue of delay, the motion for reconsideration still fails because the Section 1125(a) Claim pleaded in the Amended Complaint does not support AMCOL's present arguments. Instead, as noted above, while some allegations in the Amended Complaint suggest the possibility of a claim based on injury to AMCOL's goodwill with its creditor customers, the damages sought under AMCOL's Section 1125(a) Claim are based solely on statements that allegedly diverted, confused, or mislead *debtors*. The motion to reconsider is denied on this basis.

Faced with Defendants' motion to dismiss, AMCOL could have sought leave to amend to clarify or expand its Section 1125(a) Claim. It did not do so. It instead included only a conditional request to be allowed leave to amend should the court find any deficiencies in its allegations. Even now, in seeking reconsideration of an order dismissing the relevant claim, AMCOL does not move to amend or proffer specific allegations that would cure the deficiencies. Rather, it makes generalized arguments that it *may* have a claim as to creditors.

While the court might rely on this delay to deny leave for further amendment, it declines to do so in the interest of resolving the dispute on the merits. The court will not, therefore, preclude AMCOL from seeking leave to amend should it have a good faith basis for doing so consistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure. Any such amendment

13

must, however, be sought by motion under Rule 15(a) of the Federal Rules of Civil Procedure and assert only such claims as are not precluded by this and the prior Dismissal Order.

## II.     MOTION TO DISMISS STATE LAW CLAIMS

As noted above, the court previously granted Defendants' motion to dismiss the two federal claims but declined to address the motion as it related to the state law claims. The court now considers the merits of the arguments for dismissal of AMCOL's state law claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure..

### A.     Standard

A motion under Federal Rule of Civil Procedure 12(b)(6) should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of its claim(s) that entitles it to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Although the court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions [the plaintiff would draw] from the facts." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may also disregard any "unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

The Rule 12(b)(6) standard has often been expressed as precluding dismissal unless it is certain that the plaintiff is not entitled to relief under any legal theory that plausibly could be suggested by the facts alleged. *See Mylan Labs., Inc. v. Markari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Nonetheless, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoted in *Giarratano*, 521 F.3d at 302).

14

Thus, in applying Rule 12(b)(6), the court also applies the relevant pleading standard. Despite the liberal pleading standard of Rule 8, a plaintiff in any civil action must include more than mere conclusory statements in support of a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court need only accept as true the complaint's factual allegations, not its legal conclusions); *see also McCleary-Evans v. Maryland Dept. of Trans.*, 780 F.3d 582, 587 (4th Cir. 2015) (noting "*Iqbal* and *Twombly* articulated a new requirement that a complaint must allege a plausible claim for relief, thus rejecting a standard that would allow a complaint to survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery." (emphasis and alteration in original, internal quotation marks omitted)); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278 (4th Cir. 2012) for proposition plaintiff need not forecast evidence sufficient to prove the elements of a claim, but must allege sufficient facts to establish those elements).

### B.  Common Law Trademark Infringement and Unfair Competition

Under its common law claim for trademark infringement and unfair competition, AMCOL alleges as follows:

> 47.  Through long-standing continuous and exclusive use of the Trademarks, AMCOL has acquired common law rights in the Trademarks. AMCOL possesses common law rights in the same geographic areas that Defendants operate and advertise their business.
>
> 48.  Defendants' acts set forth above are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with AMCOL, or as to the nature, origin, sponsorship, or approval of AMCOL's goods or services in violation of the common law of South Carolina.

ECF No. 8 ¶¶ 48-49.

These allegations mirror the allegations of confusion and deception as to origin found under AMCOL's Section 1114 Claim. *See*, *e.g.*, ECF No. 8 ¶ 37 (alleging under Section 1114 Claim that "Defendants' unauthorized use of AMCOL's trademarks . . . is likely to confuse and has confused the ordinary consumer as to the nature, quality, source, origin and/or sponsorship of AMCOL's services."). They also correspond with allegations found under AMCOL's Section 1125(a) Claim that Defendants' use of AMCOL's mark in its online advertising could divert debtors attempting to contact AMCOL resulting in those debtors working with Defendants rather than AMCOL. *Id.* ¶ 43 ("Debtors attempting to contact AMCOL to resolve their debt will be diverted by Defendants' online advertising and are likely to be deceived and misled into believing that AMCOL operates its business unethically and unlawfully."). *See generally Shakespeare Co. v. Silstar Corp.*, 802 F. Supp. 1386, 1399 (D.S.C. 1992) (noting elements of claim for trademark infringement under the Lanham act are the same as for South Carolina common law claim for trademark infringement and unfair competition), *rev'd on other grounds,* 9 F.3d 1091 (4th Cir. 1994).[8]

### C.     DEFAMATION

AMCOL's Defamation Claim relies, inter alia, on allegations that one or more headings included in Defendants' internet advertising libelously suggest AMCOL harasses debtors in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1601 et seq. ECF No. 8 ¶ 52

---

[8] Defendants argued for dismissal of AMCOL's common law claim for trademark infringement and unfair competition based on the commonality of elements as addressed in *Shakesspeare*. AMCOL did not respond to this argument or otherwise address the viability of this common law claim in its opposing memorandum. Thus, AMCOL appears to have abandoned this claim. AMCOL has not, in any event, suggested either argument or amendment that might cure the deficiencies in this claim.

(specifically identifying heading "Stop AMCOL Systems Harassment"). It also relies on comments posted on the same website, possibly by persons unrelated to Defendants, which may support the same inference. *Id.* ¶¶ 53-55 (quoting three comments and names to which they are attributed). AMCOL seeks to hold Defendants responsible for these comments, even if posted by third parties, "because [Defendants] invited and encouraged the comments through their accusatory statements against AMCOL[.]" *Id.* ¶ 56. Finally, AMCOL attributes some unspecified negative comments directly to Defendants, alleging that Defendant Sergei Lemberg posted them under the alias "RightsGuy."

To the extent this cause of action relies on allegations that have not been specified, e.g., comments by "RightsGuy," unspecified headings, and any otherwise unspecified statements, the claim fails under Rule 12(b)(6) for lack of specificity. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Defamation Claim is, therefore, dismissed to the extent it alleges defamation based on unspecified statements.

For reasons argued by Defendants, allegations based on statements in the comments section may ultimately fail under the Communications Decency Act of 1996, 47 U.S.C. § 230 ("CDA"), which provides immunity for third-party comments to "providers of interactive computer services." ECF No. 12 at 18-19 (relying on CDA and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009)). The court does not, however, find the allegations so clear as to warrant dismissal based on the potential availability of this defense. This is, in part, because it is not clear at this stage whether the comments were posted by third parties. *See* ECF No. 8 ¶ 57 (alleging "several aliases or commentators are in fact alter egos of and/or under the control or influence of Defendant Lemberg").

The Defamation Claim also survives the motion to dismiss to the extent based on the specifically identified heading "Stop AMCOL Systems Harassment." This is because, on the present record, the court cannot say that no reasonable fact finder could find that the heading states or necessarily implies a false and defamatory statement of fact.

The court, therefore, denies the motion to dismiss as to the Defamation Claim, but limits AMCOL to reliance on the statements specifically identified in the Amended Complaint. This precludes reliance on unspecified statements by "RightsGuy."

### D.     SCUTPA

AMCOL's claim for violation of the SCUTPA incorporates all preceding allegations and then recites the elements of a SCUTPA claim without any factual elaboration. Thus, the Amended Complaint does not indicate the specific basis for this claim.

In its response to Defendants' motion to dismiss, AMCOL incorporates its allegations from its federal and common law infringement claims, stating as follows: "The same factual allegations that support the trademark and unfair competition claims also support AMCOL's cause of action for violation of the [SC]UTPA." ECF No. 13 at 18. AMCOL confirms the interdependence of its SCUTPA and trademark infringement claims by suggesting the SCUTPA Claim provides a basis for enhanced damages and recovery of attorney's fees *if it proves* either or both of its trademark infringement and common law trademark infringement and unfair competition claims. *Id*. at 20 ("The same factual allegations that support the trademark and unfair competition claims also support AMCOL's cause of action for violation of the [SC]UTPA. *If AMCOL proves one or more of these causes of action*, the [SC]UTPA entitles AMCOL to punitive damages including treble damages and attorney fees."). AMCOL makes no other argument in support of its SCUTPA Claim.

18

AMCOL's SCUTPA Claim fails to satisfy the *Twombly* pleading standards because it consists of nothing more than boilerplate recitation of the elements of a SCUTPA claim. Even if incorporated into the Amended Complaint AMCOL's arguments in opposition to dismissal fail to cure the deficiency because they tie success on the SCUTPA Claim to success on federal and common law claims the court has found deficient for reasons stated in the Dismissal Order and above. While the court does not hold that AMCOL cannot possibly state a claim for violation of the SCUTPA, it does hold that AMCOL has not only failed to do so in the Amended Complaint, but has also failed to suggest a basis for such a claim in opposing dismissal.

## CONCLUSION

For the reasons set forth above, AMCOL's motion to reconsider is denied. To the extent not previously addressed, Defendants' motion to dismiss is granted as to AMCOL's claims for common law trademark infringement and unfair competition (third cause of action) and violation of the South Carolina Unfair Trade Practices Act (fifth cause of action). The motion to dismiss is denied as to the Defamation Claim. Dismissal of claims is without prejudice to AMCOL's right to seek to amend the complaint if such amendment is otherwise warranted.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
February 16, 2016